UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADY PHARES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 1:16-cv-01803-JMS-MJD |
| ) | |
| KNIGHT Superintendent, ) | |
| ) | |
| Respondent. ) | |

**Entry Denying Petition for Writ of Habeas Corpus**

The petition of Brady Phares for a writ of habeas corpus challenges a prison disciplinary proceeding, IYC 15-10-0063, in which he was found guilty of fleeing/resisting. For the reasons explained in this entry, Mr. Phares' habeas petition must be **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On October 3, 2015, Sergeant T. DeWitt issued a Report of Conduct charging Mr. Phares with fleeing/resisting in violation of Code B-235. The Report of Conduct states:

> On 10-2-2015 at approximately 1:30 P.M. I, Sergeant T. DeWitt, was in HUE assisting with the placement of the dorm on tier 2. After I had bunked the unit, as instructed by my shift supervisor, the dorm was called to lunch. Q-Unit's behavior had improved so I released the unit for chow. After all of Q-Unit had been released for lunch I stood in front of the offender library in the day room and released P-Unit for lunch. Officer R. Manley began walking out of the unit, into the day room. I observed offender Phares, Bradley #238872 also exiting the unit yelling loudly and drawing my attention. Offender Phares began to close the gap between him and Officer Manley to the point of making contact, all the while being verbally disruptive and disrespectful toward Officer Manley. I ordered the offender to stop and move away from the officer. The offender refused to step out of Officer Manley's reactionary gap. I utilized a limited amount of force to guide the offender away from the officer, and then place him in restraints. Lieutenant G. Roach arrived and escorted the offender to HSU and then to RHU for a timeout.

Dkt. 8-1.

Mr. Phares was notified of the charge on October 10, 2015, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). Dkt. 8-2. The Screening Officer noted that Mr. Phares requested statements from Offender Joshua Cox and Correctional Officer Manley. He also requested the video from the dayroom from 1:15 PM to 1:45 PM. Offender Cox offered the following statement:

> I saw offender Bradley joking with an officer about a whellchair [sic]. Befor[e] chow time and when they called chow he made another joke to the same officer when the sargent [sic] then started to yell and forcefully move offender Bradley then when Mr. Bradley did not move fast enufe [sic] they sarge pushed him at that time. I left the dorm for chow. The reason the offender did not move fast was because he has knee problems.

Dkt. 8-3.

Officer Manley offered the statement, "On 10/02/15, I Officer R. Manley heard Sgt. T. Dewitt order Offender Phares to stop and put his hands on his head. I have no knowledge of an aggressive manner because the offender was behind me." Dkt. 8-4.

A summary of the video states:

> On the date and time above I, DHO J. FAUDREE reviewed the P SIDE DAYROOM Camera for an incident that occurred on 10/2/15. After reviewing the cameras I clearly observed at 1:37:22 PM Sgt. Dewitt place his right hand on Offender Phares, Bradley's left arm. The offender then jerks his left arm out of Sgt. Dewitt's right hand and keeps walking. At 1:37:23 PM Sgt. Dewitt places his right hand on the small of the back of the offender and escorts him to the Sergeant[']s office.

Dkt. 8-5.

The Hearing Officer conducted a disciplinary hearing on November 2, 2015. Dkt. 8-7. During the hearing, Mr. Phares offered the statement, "I was going to chow and I was joking with the officer. Next thing I know I'm across the room. I didn't do anything. Sgt. just miss understood [sic]." *Id.* The Hearing Officer determined that Mr. Phares had violated Code B-235 fleeing/resisting based on the staff statements, the offender's statement, and the video. The sanctions included a 30 day restriction of phone, commissary, and Jpay privileges, the deprivation of 60 days of earned credit time, and a demotion from credit class I to II (suspended). The Hearing Officer imposed the sanctions because of the seriousness, frequency, and nature of the offense, the degree to which the violation disrupted or endangered the security of the facility, and the likelihood of the sanction having a corrective effect on the offender's future behavior.

Mr. Phares filed an appeal to the Facility Head. Dkt. 8-8. The appeal was granted to the extent that the earned credit time deprivation was reduced to 30 days. Mr. Phares then appealed to the Final Review Authority, who denied the appeal on December 30, 2015. Dkt. 8-9. This habeas action followed.

### III.  Analysis

Mr. Phares alleges that his due process rights were violated during the disciplinary proceeding. His claims are that 1) the video summary does not say that he pulled from the officer's hand; 2) the camera on P Side Dayroom will show that he never pulled from the Sergeant's grip; 3) the conduct report should have been for a 347-C refusing an order; and 4) the conduct report does not state that he resisted. The respondent reports that the video itself is no longer available because it was destroyed when the prison had a series of technical problems.

Each of Mr. Phares' claims challenge the sufficiency of the evidence to support the charge of fleeing/resisting. The "some evidence" evidentiary standard in this type of case is much more lenient than "beyond a reasonable doubt" or even "by a preponderance." *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (hearing officer in prison disciplinary case "need not show culpability beyond a reasonable doubt or credit exculpatory evidence."). *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) ("In reviewing a decision for 'some evidence,' courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.") (internal quotation omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Code B-325 fleeing/resisting is defined as "[f]leeing or physically resisting a staff member in the performance of his/her duty." Indiana Department of Correction, Adult Disciplinary Process, Appendix I: Offenses (June 1, 2015). Mr. Phares argues that he did not pull away from the officer and that at most his conduct supported a Code C-347 charge of refusing an order.

The conduct report alone can be sufficient evidence in a disciplinary habeas case. In this case, however, there is more than the conduct report. The reporting officer, Sgt. Dewitt, observed Mr. Phares yelling loudly while he was following Officer Manley walking out of the unit. Mr. Phares got closer to Officer Manley to the point of making contact while being verbally disruptive and disrespectful to him. The reporting officer ordered Mr. Phares to stop and move away from Officer Manley, but Mr. Phares refused to step back. The reporting officer "used a limited amount of force to guide the offender away from the officer, and then placed him in restraints." Dkt. 8-1.

The summary of the video requested by Mr. Phares also showed that Mr. Phares "jerks his left arm out of Sgt. Dewitt's right hand…" Dkt. 8-5. The conduct report and the video together support the charge that Mr. Phares made contact with Officer Manley while being disruptive and disrespectful, and he then refused to step back. When the sergeant tried to restrain Mr. Phares, he physically resisted. Contrary to Mr. Phares' arguments, there is sufficient evidence to support the resisting charge. While Mr. Phares also refused to comply with an order, there is some evidence that he physically resisted an officer or officers trying to perform their work.

Mr. Phares was given proper notice and had an opportunity to defend the charge. The Hearing Officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Phares' due process rights.

## IV.  Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Phares' petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  October 17, 2016

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel

BRADY PHARES
238872
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168